16-0554 Carroll and the Petitioner of Trump, Larry W. and the Respondent, Abby Lee arguing on behalf of the Petitioner of Trump, Mr. Jerry W. Kinner arguing on behalf of the Respondent, Abby Lee, Ms. Carrie M. Flynn Mr. Kinner Good morning, Your Honor. Good morning, Your Honor. If it pleases the Court, this matter comes before the Court on the Court's branding Mr. Williamson's 2615 motion denying Madonia's third motion for interim attorney fees and I believe concomitantly whether or not under the new Parenting Act interim attorney fees are still permissible under the new Parenting Act. Mr. Williamson made two arguments in his 2615 motion the first of which he indicated that the Parenting Act's reference to 508A was insufficient and thus, according to Mr. Williamson, the playing field was not applicable. As the Court knows, the Stell Court undertook a thorough analysis of the interrelationship between the Parenting Act of 1984, 508, and Section 501C-1 and concluded that under the prior Act, that interim fees could be awarded under the Act using the methods, factors, and procedures set forth in Section 501C-1 of the Marriage Act. Section 809 of the new Parenting Act is identical to the former Parenting Act thus indicating that under the new Parenting Act also permits the award of interim attorney fees. It is a fundamental principle that when the legislature chooses not to amend a statute to reverse a judicial conception such as that made of the Stell Court that it is presumed that the legislature has acquiesced in the Court's statement of the legislative intent. The trial court looked to the intent of the appellate court in Stella as well as the new Parenting Act and the Marriage Act and the trial court concluded that it appears to be good law in that it stands for the proposition that the provisions of interim fees for the Marriage Act can still be applied to an attorney action. Counsel, I read your prayer for relief and you asked for a remandment for further proceedings on all three of your fee petitions and I'm curious as to why it's all three as opposed to just the last one. Didn't the last one cover the first two? The answer to that is yes, the last one did cover the first two. Because nothing was heard on the first two interim fee petitions, for reasons I don't know exactly, I know the court made some comment in its ruling on June 14th that there had been an argument that Madonna was not given access to the court system. And so, again, depending on how the court interprets the first two motions, whether they're still applicable or they're dead, and or whether the third motion is a motion for interim fees, as I argue, or whether it is a final fee petition, as Mr. Wedgelson argues, it may make a difference, I gather, in how the court decides on whether the first two motions could be heard or whether the third one takes care of all the motions. Because all of the fees related thereto were culminated and added into the third motion. And everything's done, right? I mean, everything's done, right? I mean, the case is over other than what we're doing here, correct? That's correct. Everything just finishes over. So, I mean, how do we set a bet for an interim fee petition? Well, I, according to the Giovanni Court, it was talking in terms of a final fee petition. It said it agreed with the circuit court that pursuant to 503J, a petition for a contribution to fees must be heard and decided before the final judgment is entered. Under the Act, judgment for dissolution is final when it becomes final. However, nothing in the clear and unambiguous language of the Act, and specifically that in Sections 503J and 508A, provides that once a judgment is entered in a dissolution, the court loses jurisdiction to consider a pending contribution petition. The timing provisions in Section 503J are not a jurisdictional correction. Right. I agree with what the Giovanni says, and that says that if we set this back, it would be back for a final allocation of fees, correct? Yes. So that would be under 503J, correct? Well, I guess I'm somewhat parsing because if I've never had any access to the court on the first two petitions, am I going to be denied any access whatsoever because it is now a final fee petition under 503J? I think I'm still entitled to award of fees under 503J. When you say an award of fees, aren't you kind of spreading that kind of thick, and isn't it that you're asking for contribution? It's not that you're asking for fees or a judgment to be entered against your client. Oh, I'm not asking for judgment against my client, no. I may have misspoke. I'm asking for a contribution award of fees from the opposing party. No, you didn't say contribution before. My mistake. What evidence in the record is there that there was ever a request of the trial court actually to bring the matter to hearing, either after the first petition, the second petition, or even the third petition? And is there any evidence in the record that there was a request specifically that the matter be set for a hearing? I believe on December 3rd, the court set the matter for a hearing on the first petition to be heard on March 3rd, the first day of the custody trial. But then one that didn't happen. Was there anything said to the trial court about we need to get a resolution of this matter on the interim fees? Because if not, how could this be construed as abusive discretion on the part of the trial court not to have held a hearing,  Well, on March 3rd, the first day of the custody trial, when the court began listing what was there for a hearing on that day, it included, said something to the custody trial. It also made reference to the first fee, petition for interim fees. And it also stated on that same date that Medina had filed a second motion for interim fees that was filed on February 29th. So the court was aware on March 3rd that there was two motions pending at that time. Obviously, on February, on March 3rd, Mr. Williams had not had an opportunity to respond to the first, to the second motion that was filed on February 29th. There's nothing in the record that indicates why at the end of the custody trial, the court didn't tell us to proceed, but the court did not tell us to proceed. Well, but the court was never asked to begin the hearing, was it? Well, there's nothing in the record that says that I said on anything on March 3rd and March 4th court we still had this hearing. But the court did make reference to both petitions. It is possible, pure speculation on my part, maybe the court wanted to hear both petitions at the same time. In other words, the one that had been pending since November 2nd and the second one that was filed on February 29th. Well, by not proceeding and not requesting that the matters be resolved, did she not forfeit her right to a hearing under these two interim petitions? I don't see it that way, no. Well, I don't think that it is the court that's supposed to schedule a hearing. And if the court is supposed to schedule a hearing, it can tell the parties when to go forward with that hearing. I don't think there's a waiver involved. Well, you were asked whether she forfeited it. And I would ask whether you forfeited it. Well, I don't think I forfeited it on behalf of my client. There was a second argument in the 2-6-15 motion that indicated that the counsel was representing Adania Bono. There's no arguments in the court brief regarding that. The trial court did not address that issue. What Williamson did not argue in this 2-6-15 motion was that the third motion should be interpreted to be a fee petition under 503-J. I know this court in its Schultz opinion stated that it is well established that a plaintiff may not recover on a theory that is not contained in his complaint, and that proof without pleadings is as defective as pleadings without proof, and is axiomatic that the party must recover at all and on, according to the case that he's made for himself in his pleadings. It seems to me that possibly because Mr. Williamson did not allege that Adania's third motion for NFPs was a final fee petition, that the court granted relief to Mr. Williamson that he had not asked for in his motion. And as the court knows, in moving on to the 2-6-15 motion, the court must accept as true all will to the facts and any reasonable inferences therefrom. Therefore, the court should have accepted as true the facts that Adania had filed two previous interim fee petitions that were still pending and undetermined. And the reasonable inference that could be drawn from that is that no schedule on those hearings had been held. Again, I already mentioned about the court indicated on March 3rd that the two motions, the motion for, two motions were, one motion was pending and the other one was, had been filed. When was the decision made with respect to the relocation? Was that decided later in March, March 24th? Yes, it was. So at the time the third petition was filed, there still were matters that were open, is that right? That is correct. Including the GAL fees. That is correct. Is there a distinguishing fact as between interim and final fee petitions? Well, I guess the short answer is yes, because the M.O. fees are asked for and awarded during the pending issues, whereas 503J tells us that the final fee contribution petition. The, I believe the law states that if it's an interim petition for fees, that it should be a summary proceeding and not evidentiary. I don't think that necessarily applies to a final fee petition. I don't recall the language in there. I thought there was some language in there about it being also summary, but I'm not going to, I don't have an answer to the court's question. Well, one elementary difference between the two is the final fee petition is the last one. And the interim petitions are interim, and it can be X, whatever, or Y, or X plus one, or whatever. You could have been filing interim petitions on a weekly basis, could you not? Well, yes, I could. Or maybe an interim petition every time you appeared in court, because if an interim petition was supposed to be heard summarily, it could have been taken care of hopefully on the day that you were before the court. Well, first of all, the petition was filed on November 2nd. I got involved in mid-September of that year. The first one was filed on November 2nd because there was a lot of work being going on and a lot of issues being argued. And by the time we got to mid-February in preparing for trial, there was a whole lot more fees incurred again. So I filed the second motion for interim fees at that time. When I was in college, I had a pet phrase for irony, and it was, they're the same, only different. And in this instance, the interim and the final fee petitions may or may not be the same, only different. What is your observation as to are they distinguishable other than in time or finality? Other than, I think it's close. The answer is the latter. That is to say that only in time and finality is the difference between them, Your Honor. Any other questions? No, sir. Thank you. Thank you. You have an opportunity to make rebuttal. Thank you. Ms. Bourne. Would you like to respond to my statement about they're the same, only different? Yes, Your Honor. Good morning, and may it please the Court. Carrie Bourne on behalf of the respondent appellee. There is a difference between interim and final fee petitions within the statute in that there are different factors which courts are to apply in a Section 501 versus a Section 503, and the way in which they're heard are different. I think Your Honor pointed out that a 501 petition is summary. There's not a right to an evidentiary hearing, whereas in a 503 petition, that is not the case. You have also in 503 there's a requirement that the attorney seeking fees produce an itemized billing statement. The analysis and the procedure are just simply different, and if the legislature intended for them to be the same thing, then they wouldn't have distinguished 501 from 503. I mean, I do agree that there is a timing element to it. And I think that that goes to counsel's first argument that an interim fee petition can somehow survive the entry of a final judgment or the disposition of all other issues in a case, and I don't think that that has any support in the statute or in case law. Doesn't DiGiovanni seem to say that? I believe that – I'm sorry, I don't understand. In remarriage of DiGiovanni, that was a case where the case was over and there was a fee petition pending, and the argument was made that you couldn't have it under 508. You couldn't have a fee – I'm sorry, under 503. You couldn't have a fee petition take place after the case was done, and court went through a jurisdictional analysis and said, yeah, you can, and based on the intent of the statute, you should. I mean, that's true. So you could file a 503 petition before the case is disposed of, and depending on how the court decides to brief it or have it heard, the requirement isn't – I think it was the timing requirement, or that it wants to be heard before entry of the judgment is something that doesn't have to be filed. What was to keep the court in this case from – even though it was, you know, captioned interim fee petition, third interim fee petition, what's to keep the court from, you know, seeing it as a final petition based upon the timing? I mean, it was filed before the case was completely disposed of. True, and in this case, the court did find that it was in fact a 503 petition and not a 501 petition, but I don't know that – I mean, the court found that it was deficient based on not having this fee arrangement. Correct. I also think the court could have dismissed it because it wasn't properly pled. As I pointed out earlier, 503 asked the court to apply different factors, and there's different considerations than under Section 501. Well, when you say dismissed, dismissed with prejudice or dismissed with leave the plea over and make it correct? Assuming the court believed that it would relate back and that the timing requirement of 503 wasn't violated, then I believe that they could give him leave to file a final 503 petition and amend the petition. But the court could have also said that, you know, it was a 501 petition, it was improperly pled, and the court did say that it was moved by the time that it was before the court in terms of Section 501, which I believe was accurate. But it was timely under 503, was it not? I mean, under 503, it's supposed to be filed after the close of proofs but before final disposition. This was filed after the close of proofs but before the final order on March 24th, correct? That's true, and if we want to say that it could be construed so liberally as to say, well, a 501 petition, if filed timely, can stand as a 503 petition, then that's accurate, I would say. I mean, the trial court found that this was a 503 petition and then found based upon that, or I should say held based upon that, that the 508C requirements applied to it, correct? That's correct. Where did you argue that in your 615 motion? The 6, where did the... Where did you argue that, that issue in your 615 motion? I was not trial counsel, but... Oh, I'm sorry. That's okay. It was the second, I believe it was count two of the motion to dismiss. It was count one was that, you know, after the statute was amended, maybe still is not, is still good law. The trial court rejected that argument. I believe count two was the motion to dismiss argument that because counsel did not have a written fee agreement with his client, he didn't conform to the requirements of 508C, and therefore, it should be dismissed. I'm looking at the motion. Unless I don't have a good copy, you know, more recent copy of the motion, but I'm looking at it right now, and the second basis that you're talking about starts in paragraph 10. It looks like it was filed on May 4th of 16, the motion to dismiss, and it talks about that there was no fee agreement attached, and it says based upon that, this was a pro bono relationship. It says nothing about 508C. That's true, Your Honor. I think that it was trial counsel argued that at the hearing, and he said at the hearing on the motion to dismiss that because there was no written fee agreement, 508C wasn't conformed with, and therefore, the trial court should dismiss it. And so that's in the substance of the arguments. It's true that it does not appear specifically in the motion to dismiss filed by counsel. I'd like to just kind of clear up what Justice Dinoff was asking. There was no request to bring the temporary fees to hearing. There's nothing in the record that indicates that counsel ever said to the trial court, I need hearing on my interim fee petitions. And counsel does ignore the fact that he did have a hearing on his first interim fee petition, which he decided not to proceed with at that time. For whatever, all he had to do was just ask the court, arguably, to make a finding at that point because it could have been determined on the basis of affidavits, but there was never any request. He just files a second motion and presents it at the trial date, but there's nothing indicating that he, in fact, raised the argument that his interim fee petition should be heard first. And it's arguable that that issue isn't right to be heard before this court because we're here on the review of the granting of the 615 motion to dismiss and not the denial of the 501 petition. It's semantics, but that's kind of not what the trial court got to, and it was an issue that was never raised by counsel until hearing on the motion to dismiss. I do, you know, think that... What authority is there that there has to be a written agreement in order to obtain interim fees? I cannot find any authority to support that. Well, I would submit to you that there probably needs to be at least an indication that the client is willing to allow the attorney who is seeking the fees to appear on behalf of that individual and represent them in these proceedings. Because if there is no acknowledgment of that, then technically there's no attorney-client relationship, and I don't see any basis upon which the appearance of that attorney should be allowed to go forward. But beyond that acknowledgment, I don't know why there would need to be an agreement as to fees when the trial court is supposed to be setting interim fees. And especially if it's indicated that the client is so indigent that they can't afford fees. And I like the tact that your side's taken, that therefore it's indigent of an intent to do pro bono work, but in the process of that logic, it seems to refute or defeat the purpose for having the attorney present. I don't see any statutory authority for interim fees. Because if you accept the factual scenario here, she is probably the most needy of clients who need interim fees short of possibly being homeless as well. I don't know if you want to comment or if you want to try and reconcile the idea that we're supposed to presume that Mr. Kinnan is one of the nicest people on earth and is willing to do his pro bono. I think what is interesting about this case or the facts of this case are important to this analysis is that there was never even a meeting of minds as to what Ms. Madonia would pay. I mean, I concede I can't find any authority that says that under Section 501, the party seeking fees has to show that there is a written fee agreement between herself and her counsel. But I do know that the leveling amendments enacted by the legislature in 1997 meant to protect the consumer. And in cases like this… Yes, but if there were a written agreement and your client was not one of the signatories to that written agreement, I don't know how that written agreement would have any binding effect on your client at all. And if he's seeking contribution from you, I don't know how your client has been prejudiced by not having a document that he didn't sign. If anything, it would tend to indicate that the basis of compensation, which I believe as much as he deserves or whatever it's worth, would bode well for your client as opposed to some high hourly rate. That's definitely possible. I think, though, that one of the things that needs to be considered as well is the fact that he's essentially, by not having any fee agreement, by not having any agreement with his client at all about what his fees are, he's essentially asking the court to make a 508C determination on his behalf because he and his client can't agree at all what he's entitled to. Well, I thought… I'm sorry. Go ahead. Well, I thought, isn't he saying that it should be done based on quantum merit in a separate hearing? I believe he… It wasn't exactly clear. I got the impression that he was asking this court to… Sorry. Judge McJoint to kind of make a determination as to what his fees should be and then order Larry to contribute. Or I think that that's something that the court would practically have to do in this situation. They would have to figure out how to know what Larry should contribute before we know what Carol owes in the first place. And so that's essentially asking the court for a 503 determination where he wouldn't have standing to do that. But the fee petition asked for a certain amount. It said, I've already expended so many hours, $300 an hour. That's true. This is the amount I'm asking for. Wouldn't your client at a contribution hearing have the ability to contest the hourly rate? Would he? Yes. And wouldn't he be able to contest the billing statements? If it was a 503 hearing, yes. I mean, a final contribution hearing. Yes. So the fact that there's no fee agreement, really your client is not disadvantaged or advantaged in any way. He'd be able to still contest these things, correct? Sure. I mean, when you look at Stella, you look at Raka, you know, the court's given a great deal of language on the legislative intent of these statutes, and allowing for hearings on these type of petitions. Isn't your argument today basically the antithesis of that legislative intent? I don't think so. I think that the intent ties all into it. If the intent was to give parties like Carol some knowledge of what her fees were going to be, then we shouldn't encourage relationships like the one in this case because it's never really clear to Carol what she owes at all. So I don't think that, I think you can reconcile those things. I don't think they're mutually exclusive. I think that the protection to Carol also kind of carries over into all of this analysis. And there's strong public policy reasons why we don't want this type of fee agreement to go forward where there is no written fee agreement. Isn't Carol absolutely protected by this statute? Because if her attorney tried to seek a judgment against her after the case is over, after he withdrew, then 503 kicks in, or 508C kicks in, and you do not have a hearing. I mean, that's when the client can say, we had no agreement, we're having no hearing, you get no judgment. Right. Unless you file a separate lawsuit. Correct, and that's what the statute says to do. So, I mean, really that ultimately protects her, I mean, completely. I think that's true, but I also think it could be chilling to a litigant like her to see if the court here makes a determination about her fees and she just assumes that, well, if the court here filed that, then what difference or what, you know, what different outcome is going to happen in the filing. Well, we're not making a determination about her fees. I mean, we can't sit here and say, yeah, that 22,000 is the right amount. We don't know that. That's true. I apologize. The trial court. Basically, we would just send it back for a hearing, and then the trial judge would have to hear all these things. Correct. And your client would, again, as we've talked about before, be able to contest those things. I misspoke. When I said this court, I meant the trial court. Thank you for clarifying. Any other questions? Thank you. Thank you. Please, Court. 501C only provides that for the submission of affidavits and relevant factors. It does not request providing the requirement for a signed fee agreement. The buyer court also indicated that the express language of the statute that states that itemized billing statements and a copy of a retained agreement are not necessary to establish reasonableness of any fees. Whether it be an interim fee petition or a final fee petition, I agree that the respondent could challenge the hourly rate or the work done. The court was well aware of all the work that had been done up to date, and I think the court, trial court, and its expertise could determine the reasonableness of any fees that have been requested, be it an interim fee petition or a final fee petition. We'll do the latest arguments. I think counsel referred to it partially in the comments today, but also in a brief. She went into length regarding that notwithstanding what type of a fee petition it was, that because she would look to the subparagraph 5 of 503J, which indicated to her that a fee petition still would be required to be filed before any fees could be granted. I disagree with that conclusion for several reasons. First of all, there's been no, yet no award of any fees paid to Adania or counsel. 503J-5 does not require that the parties must have entered into a fee agreement in order for the court to allocate a judgment for fees between the parties. Under the facts of this case, I am the real party of interest, and any fees would be awarded to me, so I don't see how there would be any allocation for fees being allocated to Adania, who has not paid any fees whatsoever. 809 of the Appearance Act indicates only the relevant factors are to be considered. Counsel, let me interrupt you for a minute. Sure. You argued in your initial argument that the 615 motion did not contain a 508C argument. Correct. Now, counsel argued during her, opposing counsel during her argument, that trial counsel for Mr. Williamson did, in fact, argue that 508C during the hearing. Now, I'm looking at the transcript. It's not as clear, maybe, as that, but it's certainly clear that the trial court relied on 508C in its ruling. The trial court definitely relied on that it was a 508. Well, I'm looking at the transcript, but I don't see anywhere where you objected during opposing counsel's argument at the trial level to not raising this in the 615 or pointed that out to the trial court when the trial court was ruling or in a motion to reconsider or something like that. When I went through it, I could not find the language anywhere in the transcript that I had where counsel at that time had argued that. And I'll top my head, I'm not sure where the court got it. It may be in a pretrial hearing or something like that. Maybe he raised it at that time. But I couldn't point to anything to indicate in my brief. At a pretrial conference off the record, you mean? Yes. Okay. One of the other arguments that I think is relevant to fee petitions is I feel that the argument appears to be contrary to the purpose of leveling the playing field. If a fee agreement is a prerequisite to either an interim fee petition or a final fee petition, an attorney would likely be reluctant to represent a financially disadvantaged client if the attorney knew that he would be unable to receive payment for any fees. And, again, I think this court in its rocker decision referred to the fee-shifting provisions of Section 508, coupled with the court's ability to award fees to it to constitute quite an incentive for attorneys who might otherwise decline to represent spouses and with few financial resources. Also, Section 1025 of the Act states that one of the purposes of the Marriage Act is to make reasonable provisions for spouses and minor children, including provisions for timely awards of interim fees to achieve substantial clarity with the parties. I know the rocker court rejected the rocker's suggestion that there was no contribution hearing. The attorney's petition for fees could not be heard. 503J-5 does not require that a petition party or counsel must have entered into a fee agreement ever from the express language of the statute. Therefore, I just don't see how 508C can possibly be relevant at this time. Thank you, sir. Your time is up. Thank you. The cases that we've heard today will be taken under advisement. The court is adjourned.